IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY D. HARRIS, JR.,

                    Plaintiff,

    v.                                   OPINION & ORDER

CARRIE SUTTER, TIM HAINES, KELLY TRUMM,        14-cv-153-jdp
CATHY JESS, and SHANNAN FARGEN,[1]

                    Defendants.

---

Plaintiff Larry D. Harris, Jr., a Wisconsin Department of Corrections prisoner, claims that Wisconsin Secure Program Facility and DOC officials deprived him of property without due process of law by operating a canteen system that miscalculated prices and failing to fix the mistakes in prices or reimburse him. Plaintiff also brings a state law claim for violations of the Wisconsin deceptive trade practices statute, Wis. Stat. § 100.18, based on the posting of incorrect menu prices.

Both sides move for summary judgment. Plaintiff has also filed a motion asking the court to issue a subpoena form to obtain the trial testimony of a DOC complaint examiner.[2]

After considering the summary judgment briefing, I will deny plaintiff's motion and grant defendants' motion regarding plaintiff's due process claims because I conclude that

---

[1] Defendant Fargen's surname is now Aspenson, but in keeping with the parties' briefing I will continue to refer to her as defendant Fargen. Also, I have corrected the caption to reflect the correct spelling of her first name.

[2] Plaintiff has also filed a motion to amend the complaint, Dkt. 86, along with a third amended complaint, Dkt. 87. Plaintiff wants to amend the complaint in the following ways: (1) showing that he has complied with Wisconsin's notice of claim statute with regard to his state law deceptive trade practices claim; and (2) indicating that he seeks $100,000 in damages on this claim. Defendants do not object to plaintiff's request and I see no reason to deny it. I will allow him to amend his complaint for these limited purposes.

plaintiff has received all the process he was due for the pricing errors. Because I am dismissing plaintiff's federal claims, I will relinquish jurisdiction over plaintiff's state-law claim and dismiss that claim without prejudice to plaintiff bringing it in state court. Plaintiff's motion for issuance of a subpoena form will be denied as moot.


UNDISPUTED FACTS

Unless otherwise indicated, the following facts are undisputed.

**A.  Parties**

Plaintiff Larry Harris is an inmate at the Waupun Correctional Institution. The events relevant to this case took place while plaintiff was incarcerated at the Wisconsin Secure Program Facility (WSPF), located in Boscobel, Wisconsin. Defendants were all employed by the Wisconsin Department of Corrections during the events in question. Defendant Carrie Sutter is the WSPF financial program supervisor. She oversees the prison canteen program. Defendant Timothy Haines was the warden. Defendant Kelly Trumm was an institution complaint examiner. Defendant Shannan Fargen worked in the WSPF business office. Defendant Cathy Jess is the administrator for the DOC's Division of Adult Institutions.

**B.  Canteen program**

WSPF has a canteen program through which prisoners can purchase items such as hygiene products and snacks. Inmates receive a menu and an ordering sheet and they may submit an order once a week.

Under Wisconsin Administrative Code § DOC 309.52(1)(c), "A current list of approved and available merchandise, giving the price of each item, shall be conspicuously posted at each canteen." Further details of the canteen policy for the DOC as a whole and for

2

WSPF in particular are implemented by the Division of Adult Institutions. A pertinent portion of this policy states:

> The Correctional Management Services Director shall evaluate all Canteen items on a quarterly basis. Items may be added or deleted at the discretion of the Correctional Management Services Director based on the needs of all inmates. New items will be added after presenting a proposed list of new items to the Security Director for review and approval. Prices are subject to change without notice. However, whenever possible, price changes will be announced by printing new canteen menus. Updated canteen menus will be distributed periodically to reflect current products and prices. When this occurs, all old canteen menus shall be disposed of. Unit Sergeants will be notified as soon as possible when changes are made to canteen menus in order for them to provide new menus to inmates.

DAI Policy No. 309.52.01 § I.V.

Prices listed on the canteen menu include state and local sales tax, which for Grant County, where WSPF is located, is 5.5 percent. Sales tax is rounded up to the nearest cent. The DOC requested that the canteen vendor include tax in the menu price so that inmates do not have to calculate the sales tax themselves and risk a mathematical error resulting in insufficient funds to pay for ordered items. The DOC chooses to calculate sales tax on each item individually, rounding up or down on each item, rather than adding all the items together and then calculating sales tax. The exception to this policy is when more than one of same item is purchased, at which point sales tax is calculated on the total price for the multiple identical items. Unlike the menu prices, canteen receipts list the item price and sales tax separately.

WSPF contracts out its canteen services. Starting on April 1, 2013, a company named Keefe Commissary Network took over the contract. Keefe Commissary calculates all order subtotals, sales tax, and order totals from its own computerized system. WSPF does not

calculate prices or taxes. WSPF generally does not create the menus, although defendants state that WSPF staff creates menus for inmates in administrative confinement or segregation by separating out the items that are allowable for inmates in these special statuses. From the evidence submitted by the parties, it appears that plaintiff was in administrative confinement for at least part of the events in question in this case.

In the first few months after Keefe took over the canteen contract, WSPF discovered several discrepancies in pricing. During the first few months, there were errors in rounding of the tax amount, some items had the wrong tax rate, and some items did not have tax added to the cost as presented on the menu price. As menu price errors were discovered, WSPF staff notified Keefe and new menus were issued to inmates, but for the most part credits were not issued for these discrepancies. There were several revisions to the menus (defendant Sutter says "3-5") in the first three months of the contract with Keefe. But the parties dispute whether all of the discrepancies were caught.

## C. Plaintiff's purchases

On April 9, 2013, plaintiff placed Order #96323, which included an "Ambi complexion bar" that was incorrectly listed on the menu as $1.28. The price of the bar itself was $1.22. Sales tax of 5.5 percent is 6.71 cents, which rounds to 7 cents. This means the "correct" price of the bar plus tax was $1.29. (Plaintiff does not dispute defendants' statement that $1.29 is the "correct" price.) Plaintiff was charged this amount, and his receipt showed this price.

On April 23, 2013, plaintiff placed Order #07212, which included petroleum jelly that was incorrectly listed on the menu as $0.95. The price of the jelly itself was $0.95, but the menu did not include the sales tax of 5 cents. Plaintiff was charged $1.00 for this item.

4

Plaintiff submitted an interview/information request form to Sutter about the discrepancy. Sutter responded, stating that the "system" charged him the right amount, that the menus were being changed, and that he would receive a new menu once the changes were complete. There was a new menu issued sometime in May 2013 (the parties dispute the exact day), but the parties dispute whether the discrepancy in this item was corrected in the new menu (plaintiff provides a copy of what he says is the new menu continuing to contain the error, but the menu does not have a date). The parties also dispute whether notices about this price were posted elsewhere in the prison.

On May 14, 2013, plaintiff placed Order #23757, which was one item: another Ambi complexion bar. Plaintiff was again charged $1.29 for the bar rather than the $1.28 listed on the menu.

On May 21, 2013, plaintiff placed Order #29218, which included "Sensitive toothpaste" that was incorrectly listed on the menu as $0.71. The toothpaste's actual price was $0.68, which along with sales tax of 4 cents (5.5 percent of 68 cents is 3.7 cents), meant that the correct price was $0.72. Plaintiff was charged $0.72, and his receipt showed this price.

On June 4, 2013, plaintiff placed Order #39944, which included skin cream listed at $1.28 ($1.22 plus 6 cents of sales tax instead of the correct 7 cents) and petroleum jelly at $0.95 (which again included no sales tax, instead of the correct 5 cents). Plaintiff was charged the correct prices for these items, which meant that he paid 6 cents more than the listed menu prices for this order.

On June 11, 2013, plaintiff placed Order #45354, which included another Ambi complexion bar. Plaintiff was again charged $1.29 for the bar rather than the $1.28 listed on the menu.

On July 26, 2013, plaintiff placed Order #81794, which included three "10 x 15 catalog" envelopes. Each envelope cost 14 cents. The sales tax on the combined price of three envelopes was 2 cents. The parties' proposed facts on this purchase are somewhat unclear, but I understand it to be undisputed that the menu did not include the sales tax, so plaintiff thought he was paying 42 cents for the envelopes rather than the 44 cents he was actually charged.

On September 17, 2013, plaintiff placed Order #1951051, which included a catalog envelope priced at 14 cents, but the menu did not include the sales tax of 1 cent. Plaintiff was charged 15 cents.

On April 22, 2014, plaintiff placed Order #2873114, which included a product called "African Pride Magic Gro Herbal" (which is a hair care product, *see* http://www.african-pride.com/product/magical-gro-maximum-herbal-strength, last visited March 29, 2016). This product was listed on the menu as costing $5.67 but that failed to include the 31 cents of sales tax that applied to it. Likewise, this purchase included a moisturizing soap bar that was listed on the menu as $1.90 but did not include the 10 cents of sales tax that applied to it. Plaintiff was charged the 41 cents of sales tax that was not listed on the menu.

On May 13, 2014, plaintiff placed Order #2959781, which included a moisturizing soap bar that was listed on the menu as $1.90 but did not include the 10 cents of sales tax that applied to it. Plaintiff was charged the 10 cents of sales tax that was not listed on the menu.

6

On May 27, 2014, plaintiff placed Order #3014109, which included deodorant that was listed on the menu as $1.95 but did not include the 11 cents of sales tax that applied to it. Plaintiff was charged the 11 cents of sales tax that was not listed on the menu.

On July 14, 2014, plaintiff placed Order #3209301, which again included a moisturizing soap bar with a menu price of $1.90, but plaintiff was charged 10 extra cents for the sales tax that was not listed on the menu price.

From August 27, 2013 to March 25, 2014, plaintiff made eight other purchases, none of which had discrepancies between the menu and charged prices.

**D. Plaintiff's grievances**

On April 22, 2013, plaintiff filed offender complaint WSPF-2013-7762, in which he alleged he believed he was overtaxed on canteen items. This was regarding the 1 cent discrepancy in Order #96323. On April 23, 2013, Sutter responded to an interview/information request from plaintiff, telling him that there was an "issue" with rounding of the sales tax and that no credit would be issued. But the grievance was rejected as moot by the institution complaint examiner because she believed that plaintiff had already been reimbursed 1 cent.

On May 2, 2013, plaintiff filed offender complaint number WSPF-2013-8601, alleging he was overcharged 5 cents on Order #07212. Defendant Trumm was the institution complaint examiner for this grievance. Trumm contacted defendant Sutter about the alleged overcharge. Trumm's recommendation quotes Sutter's response:

> "There have been some issues w/tax amounts and rounding - the amounts the inmates see on our menus are different than what they are actually charged due to rounding issues. We are fixing them as we find them, but aren't printing new menus each week as there are more items coming soon and some more adjustments. To my knowledge, he is the only inmate

> complaining and I have told him these are rounding issues or
> small errors related to tax on the menus - he wouldn't receive a
> credit due to the section in our policy that states 'prices are
> subject to change without notice.'"

Dkt. 59-2, at 2. This appears to be a reference to DAI Policy No. 309.52.01 § I.V. Trumm

recommended dismissal of the grievance.[3]

On May 14, 2013, after reviewing the '8601 grievance and the DAI Policy, Haines

affirmed the recommendation that the complaint be dismissed. However, on appeal to

corrections complaint examiner Charles Facktor, plaintiff's complaint was affirmed:

> The institution was aware that it was having errors in its canteen
> billing process, primarily regarding the tax that was to be
> collected on purchases. The policy that is referenced by the
> institution which says that "prices are subject to change without
> notice", does not justify charging an incorrect amount of tax on
> purchases.
>
> Thus, recommend affirmed, with the remedy being that the
> institution reexamine what the inmate was charged for his
> purchases, and that it correct any amount that is inaccurate, and
> inform the inmate of any correction that is made to his account.

*Id*. at 5. The Office of the Secretary accepted Facktor's recommendation and ordered

reimbursement of the 5 cents. Plaintiff received that reimbursement.

On May 8, 2013, plaintiff filed offender complaint WSPF-2013-8990, in which he

alleged he was not reimbursed 1 cent as was stated in the '7762 grievance ruling. Defendant

Trumm contacted defendant Sutter and quoted her response in her ruling: "'I thought we

weren't reimbursing him b/c it was a rounding issue w/tax and he was charged correctly, it

---

[3] Plaintiff argues that Trumm violated his rights by failing to reference the DOC policy
applicable to her decision. However, plaintiff is not proceeding on a claim that his due
process rights were violated by the legal reasoning in Trumm's response. In any case, her
recommendation states that the decision was based on Sutter's statement, which appears to
invoke DAI Policy No. 309.52.01 § I.V.

was just that the copy of our menu that he has is incorrect. I've been telling him he wasn't getting the reimbursement.'" Dkt. 59-3, at 2. In recommending dismissal of the grievance, Trumm added, "this ICE addressed this issue with Inmate Harris [in] WSPF-2013-8601. *Id*. Defendant Haines dismissed the grievance. On appeal, the Office of the Secretary disagreed, stating that plaintiff should be reimbursed 1 cent "[b]ased on the previous affirmed complaint." *Id*. at 6. Plaintiff received his 1 cent reimbursement.

In July 2013, plaintiff submitted an "interview/information request" to defendant Fargen, asking to be reimbursed 25 cents for seven different orders. Plaintiff cited to the Office of the Secretary's decision in the '8601 grievance. Fargen responded by stating only that plaintiff was reimbursed 5 cents under that grievance, from which I infer that Fargen thought the order in the '8601 ruling to "reexamine what the inmate was charged for his purchases, and . . . correct any amount that is inaccurate" applied only to the purchases in Order #07212, the subject of the '8601 grievance.

## ANALYSIS

### A.  Summary judgment standard

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland*

9

*Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

## B.  Due Process

Plaintiff is proceeding on the following due process claims:

- Defendant Jess implemented a policy stating that canteen prices were subject to change without notice.

- Defendant Sutter overcharged plaintiff and resisted plaintiff's attempts to recoup the improper charges to his trust account.

- Defendant Trumm improperly denied plaintiff's complaints concerning the improper charges and effectuated the improper system of charges.

- Defendant Haines improperly denied plaintiff's complaints concerning the improper charges and effectuated the improper system of charges by confirming defendant Trumm's rejection of plaintiff's complaints.

- Defendant Fargen disregarded an order to review plaintiff's canteen transactions and correct any discrepancy.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To prevail on a § 1983 procedural due process claim, a plaintiff must demonstrate that he: (1) has a cognizable property interest; (2) has suffered a deprivation of that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

At the outset, defendants contend that plaintiff does not have a property interest in the 90 cents that he was charged over the menu prices. "A protected property interest is a 'legitimate claim of entitlement' that is 'defined by existing rules or understandings that stem from an independent source such as state law.'" *Tenny v. Blagojevich*, 659 F.3d 578, 581 (7th

Cir. 2011) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiff clearly has a property interest in the funds in his inmate trust fund account. *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986).

But defendants argue that because plaintiff received the goods he ordered, he had no property interest in "retaining" the 90 cents. Dkt. 56, at 7. They argue that prisoners do not have a property interest in canteen prices. *Id*. (citing *Bright v. Thompson*, 2011 WL 2215011, at *4 (W.D. Ky. June 6, 2011) (prisoner alleged price gouging) *aff'd*, 467 F. App'x 462 (6th Cir. 2012); *Poole v. Stubblefield*, 2005 WL 2290450, at *2 (E.D. Mo. Sept. 20, 2005) (plaintiff argued that he should not be charged taxes on commissary purchases). This argument confuses the separate issues of plaintiff's property interest and the deprivation of that interest. None of the cases cited by defendants involve the prisoner being charged more for items than he agreed to pay for them. The state cannot simply withdraw whatever sum it chooses from a prisoner's account after he has agreed to pay a certain amount for a product. I will assume for purposes of this opinion that plaintiff was deprived of funds in which he holds a property interest by being charged more than the posted menu price for canteen items.

This raises a question about whether the transactions here can properly be described as "overcharges." The evidence suggests that the problem lies in incorrectly calculated and posted tax figures for various items, and that the amount ultimately charged plaintiff was "correct" in the sense that the charged price reflected an accurate amount of tax, even if the total amount charged was more than the amount listed on the menu. Plaintiff does not dispute defendants' characterization of the accurately taxed amounts as the "correct" price in this sense. But both plaintiff and defendants ultimately agree with the Office of the

Secretary's position that the amounts charged plaintiff were improper because they were higher than the amounts shown on the menu. Therefore for purposes of this opinion, I will consider the discrepancies to be overcharges.

This leaves the question whether plaintiff was denied due process. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). From plaintiff's complaint, I understood him to be arguing that the DOC systematically overcharged WSPF prisoners for canteen items. I stated that there were three interrelated mechanisms contributing to this problem:

> First, WSPF uses a system that improperly calculates the sales tax on commissary purchases, resulting in overcharges to inmates. Second, WSPF staff has failed to correct the plaintiff's trust account even after they were informed of the errors. Third, plaintiff contends that the Department of Adult Institutions has adopted an unconstitutional policy pursuant to which commissary prices may change without notice.

July 9, 2014, Screening Order, Dkt. 11, at 4-5. The parties' summary judgment briefing has provided clarity about these deprivations: the vendor's menus contained pricing errors that led to plaintiff being overcharged; Sutter failed to fix all of the errors; and Sutter and other defendants would not reimburse plaintiff after he complained about the errors. Plaintiff attempts to blame at least some of the overcharges on prison policy.

## 1. Deprivations based on prison policy

Plaintiff does not dispute that the original source of the errors was the canteen vendor's mistakes in properly calculating or including on the menu price the sales tax for various canteen items. But plaintiff also contends that the overcharges were at least in part

caused by defendants Sutter and Jess's implementation and enforcement of DAI Policy No. 309.52.01 § I.V., which stated that "[p]rices are subject to change without notice." Dkt. 58-1, at 6.

As I stated in the court's screening order, "The paragraph providing that commissary prices are subject to change without notice is proper if it means that commissary prices may change without *advance* notice. But . . . plaintiff appears to be claiming that prices change without any notice whatsoever and that the inmates do not know what they will be charged at the time that they place their orders." Dkt. 11, at 6-7. Although it seemed unlikely that this regulation would be used to justify a change in price *after* a prisoner purchased an item, I allowed plaintiff to proceed on a claim regarding the policy itself.

Now that parties' proposed findings of fact provide a clearer picture of the WSPF canteen system and the events surrounding plaintiff's purchases, I conclude that plaintiff fails to show that this policy caused the alleged property deprivations. No reasonable jury could infer that the *initial* discrepancies were caused by intentional changes to prices that happened to be made without notice under the policy. Rather, the undisputed facts show that the discrepancies were the result of errors in the way sales tax was calculated and included in the menu prices.

There is one instance in which a defendant's subsequent refusal to correct the mistake appears to have been grounded in this policy. With regard to the discrepancy of 5 cents in Order #07212, defendant Sutter told defendant complaint examiner Trumm that plaintiff should not be reimbursed for the price error because of the policy stating that prices were subject to change without notice. However, Trumm's recommendation to dismiss the grievance based on Sutter's rationale (and Haines's acceptance of Trumm's recommendation)

was ultimately reversed on appeal. CCE Facktor reasoned that the policy "does not justify charging an incorrect amount of tax on purchases," Dkt. 59-2, at 5, and Facktor's rationale was accepted by the Office of the Secretary. The takeaway from those grievance proceedings is that the state has *not* interpreted DAI Policy No. 309.52.01 § I.V. in a way that justifies the type of calculation error plaintiff raises in this case. Because plaintiff fails to show that the policy actually deprived him of property, I must grant summary judgment to defendants on his claim regarding the policy itself. [4]

### 2. Deprivations based on errors and failure to correct them

The reminder of plaintiff's claims are grounded in defendants' implementation of a canteen system that mistakenly calculated and posted sales tax, and their subsequent failure to correct these errors or reimburse plaintiff after he pointed out the errors. But without there being an unconstitutional policy responsible for the deprivations, plaintiff does not identify any process he was due that he was not given.

Generally, due process requires the state to give individuals notice and a meaningful opportunity to be heard before depriving them of property. *Zinermon*, 494 U.S. at 127; *see also Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" (*quoting Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (Frankfurter, J., concurring))). But the lack of *predeprivation* procedures does not always violate due process. "'Due process is flexible and calls for such procedural protections

---

[4] In his complaint, plaintiff also referred to the policy explaining that sales tax would be calculated differently for the purchase of multiple identical items, but he does not develop an argument for how that policy harmed him, so the application of that policy is not an issue in the case. Also, the undisputed facts show that the overcharges in this case were not caused by the rounding method for multiple identical items.

as the particular situation demands.'" *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

The initial deprivations at issue here were the result of errors in the menu prices. Even if any of the named defendants could be considered responsible for those errors, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of . . . property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

Plaintiff also alleges that defendant Sutter failed to correct the menu errors for up to 15 months.[5] Again, if Sutter negligently failed to fix a price, there is no due process violation. *Id*. Plaintiff contends that Sutter intentionally refused to fix the prices even after he notified her about discrepancies and after Sutter responded by stating that the problem was being worked on. The parties seem to agree that Wisconsin Administrative Code § DOC 309.52(1)(c), which states that "[a] current list of approved and available merchandise, giving the price of each item, shall be conspicuously posted at each canteen," forbid prison employees from intentionally allowing the menus to contain incorrect prices. Plaintiff adds that DAI Policy No. 309.52.01 § I.V. includes a statement that "[u]pdated canteen menus will be distributed periodically to reflect current products and prices."

The parties dispute whether Sutter's actions could be considered "random and unauthorized" deprivations of property that do not violate due process so long as meaningful postdeprivation remedies are available. Dkt. 43, at 8-9 (quoting *Tenny v. Blagojevich*, 659 F.3d 578, 582 (7th Cir. 2011), which in turn quotes *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). But there is no need to get into the specialized "random and unauthorized" analysis, because

---

[5] Neither side produces evidence showing precisely when the discrepancies at issue here were fixed. For purposes of this opinion, I will accept plaintiff's assertion that at least some of the discrepancies remained unresolved for over a year.

it is clear that plaintiff's due process claims fail under the more general test set forth in *Mathews*. *See Zinermon*, 494 U.S. at 128 (the "random and unauthorized" case law "represent[s] a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."). Postdeprivation procedures may satisfy due process where it is impracticable to provide meaningful predeprivation process. *Zinermon*, 494 U.S. at 132 ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the . . . interest at stake . . . postdeprivation remedies might satisfy due process."); *see also Ingraham v. Wright*, 430 U.S. 651, 682 ("'At some point the benefit of an additional safeguard to the individual affected . . . and to society in terms of increased assurance that the action is just, may be outweighed by the cost.'" (quoting *Mathews*, 424 U.S. at 348)).

In determining whether the government's existing procedures (in this case, postdeprivation grievances) provide adequate process, courts examine (1) the nature of the interest affected by the official action; (2) the government's interest, including the burdens an additional procedural step might entail; and (3) the risk of error and the effect, if any, of additional safeguards. *Mathews*, 424 U.S. at 335. Applying those factors to the undisputed facts of this case makes clear that the existing process is adequate, or at least would have been, had plaintiff fully utilized that process.

Plaintiff's interest affected by the price discrepancies is quite small, only 90 cents total across all of the transactions at issue in this case. Courts have considered amounts larger than this to constitute only a minor interest. *See, e.g., Sickles v. Campbell Cty.*, 501 F.3d 726, 730 (6th Cir. 2007) (approximately $110 withheld from inmate's canteen funds to cover booking

costs "do[es] not begin to approach the kind[] of government conduct that [has] required a predeprivation hearing, such as a limitation on the 'historic' 'right to maintain control over [one's] home,' or the termination of government benefits.") (citations omitted); *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253 (4th Cir. 2005) (jail's policy of charging pretrial detainees one dollar per day to defray cost of housing does not require predeprivation process); *Cf. Markadonatos v. Vill. of Woodridge*, 760 F.3d 545, 552 (7th Cir. 2014) (plurality opinion) ($2.73 of "present value" loss to pretrial detainee resulting from paying administrative fee before receiving procedural protections considered *de minimis*).

The risk of erroneous deprivation seems to be low as well. Although this is a case in which overcharges did occur, the actual nature of the calculations at issue are simple. Once the decision was made to include sales tax on the menu prices, it should not have been difficult to calculate the tax for each item and add that amount to the menu price. The deduction of funds from a prisoner's account for canteen purchases is similar to other prison-related transactions that involve only elementary accounting. *Sickles*, 501 F.3d at 731 ("Errors, to be sure, may arise in any human enterprise, even one involving computers, but the simplicity of the calculations and the lack of discretion in making the withholdings renders improbable the possibility of arbitrary or otherwise improper government action."); *Slade*, 407 F.3d at 253-54 ("The daily deduction of the charge from the prisoner's account is a ministerial matter with no discretion and minimal risk of error."); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) ("The assessments . . . involve routine matters of accounting, with low risk of error.").

It is also clear that the cost to the government to add predeprivation hearings is unreasonably high. Although the parties do not provide data about the total number of

canteen purchases at WSPF, there are likely hundreds of canteen orders a week. It is simply impracticable for the state to give an *advance* hearing concerning the correct calculation of tax on canteen items for each order. It is much more feasible to give prisoners postdeprivation procedures when they believe there is an error, as the state has done here.

Of course, plaintiff might still have a valid due process claim if the postdeprivation remedies afforded him were inadequate. Indeed, several of plaintiff's claims are based on the theory that defendants directly thwarted his attempts to be reimbursed through the postdeprivation process, including claims against defendant Sutter (for providing testimony to the complaint examiner), defendants Trumm and Haines (for denying plaintiff's grievances), and defendant Fargen (for denying plaintiff's request to enforce the Office of the Secretary's grievance ruling). However, the undisputed facts show that the existing procedures effectively resolved plaintiff's problem, at least where he fully grieved them. The Office of the Secretary's rulings in plaintiff's '8601 and '8990 grievances made the DOC's position clear: prisoners should be reimbursed for the type of tax miscalculations and menu errors present in this case. Plaintiff should have been able to file grievances about each of the overcharges and gotten the same result.

Moreover, even aside from the grievance process, plaintiff had meaningful postdeprivation remedies because he retained the ability to file a state law certiorari action against prison officials who violated state law, *see Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996), and likely a tort action for conversion of property as well, *see, e.g.*, *Derge v. Reynolds*, 2015 WL 902010, at *2 (W.D. Wis. Mar. 3, 2015) ("the court takes judicial notice that Derge has an adequate, obvious and available post-deprivation remedy in the form of a claim for conversion" for claim that police officers unreasonably seized van).

18

### 3.  Fargen's refusal to reimburse

With regard to Sutter's, Trumm's and Haines's actions within the structure of the formal grievance process itself, those defendants' decisions were explicitly overruled. The situation with defendant Fargen is slightly different. Plaintiff alleges that Fargen failed to follow the Office of the Secretary's rulings by refusing to reimburse plaintiff for various menu discrepancies, stating that the decision in the '8601 grievance was limited to the purchases that were the subject of that grievance. It is understandably frustrating for plaintiff to face roadblocks in recovering his money even after the Office of the Secretary provided a ruling in his favor. But Fargen's disappointing response is somewhat understandable because the office's ruling is ambiguous as to whether it directed reimbursement for only the transaction at issue in the underlying grievance, or whether it directed reimbursement for every purchase plaintiff made. Fargen's refusal does not violate plaintiff's due process rights, because the usual process he was due—the formal grievance system—remained open for him regarding each of the individual overcharges, and presumably also with regard to Fargen's refusal to follow the Office of the Secretary's directions. And, as stated above, postdeprivation remedies in state court were available as well. I trust that DOC staff will be more receptive to future claims for reimbursement, but I conclude that plaintiff received all the process he was due. I will deny his motion for summary judgment on his due process claims and grant defendants' cross-motion on those claims.

## C.  Deceptive trade practices

The final claim remaining in this case is plaintiff's state law claim against defendants Sutter and Haines for violating the Wisconsin deceptive trade practices statute, Wis. Stat. § 100.18, by providing plaintiff with canteen menus with incorrect prices.

Pursuant to 28 U.S.C. § 1367, the court may exercise its supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, however, having dismissed plaintiff's federal claims, it is "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."). I conclude that there is no reason to depart from the circuit's general rule in this instance. The deceptive trade practices statute claim will be dismissed without prejudice to plaintiff bringing that claim in state court.

### D. Motion for subpoena form

Plaintiff has filed a motion for issuance of a subpoena form to obtain the testimony of corrections complaint examiner Charles Facktor. Because I am granting summary judgment to defendants on plaintiff's federal claims and dismissing without prejudice plaintiff's state-law claims, there will be no trial. I will deny this motion as moot.

ORDER

IT IS ORDERED that:

1.  The motion for leave to amend the complaint filed by plaintiff Larry D. Harris, Jr., Dkt. 86, is GRANTED. Plaintiff's third amended complaint, Dkt. 87, is the operative pleading in the case.

20

2.      Plaintiff's motion for summary judgment, Dkt. 42, is DENIED, and defendants' motion for summary judgment, Dkt. 55, is GRANTED with respect to plaintiff's federal due process claims.

3.      Plaintiff's state law claim under the Wisconsin deceptive trade practices statute, Wis. Stat. § 100.18, is DISMISSED without prejudice.

4.      Plaintiff's motion for a subpoena form, Dkt. 102, is DENIED as moot.

5.      The clerk of court is directed to enter judgment for defendants and close this case.

Entered March 29, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

21